IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

DAMARIS PÉREZ-RODRÍGUEZ AND
THE ESTATE OF MARÍA A.
RODRÍGUEZ-FERRER,

    Plaintiffs,

      v.

UNITED STATES OF AMERICA AND
SALUD INTEGRAL EN LA MONTAÑA,
INC.,

    Defendants.

CIV. NO. 22-1135 (SCC)

## OPINION AND ORDER

In this medical malpractice action, the defendants have moved to dismiss the plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim. Docket No. 15. For the reasons below, we grant their motion in part and deny it in part.

### I.  THE PLAINTIFFS' COMPLAINT

María A. Rodríguez-Ferrer visited Salud Integral de la Montaña (SIM), a federally funded health center in Puerto

Rico, complaining of chest pain. Docket No. 1 at ¶ 16. Dr. Erick A. Casanova-Rivera evaluated her. He ordered several tests, including an electrocardiogram (EKG). *Id*. at ¶ 17. Later that day, Dr. Casanova diagnosed Rodríguez with atypical chest pain and discharged her. *Id.* at ¶ 20. SIM did not call her back in even though her EKG was positive: It "showed an anterior infarct, possibly acute, suggesting myocardial injury." *Id*. at ¶¶ 18, 28.

Two days later, Rodríguez was admitted to HIMA San Pablo Hospital, complaining of severe chest pain that radiated to her left arm. *Id*. at ¶ 21. She was diagnosed with a heart attack. *Id*. After emergency surgery, she developed hypoxia and respiratory distress. *Id*. at ¶¶ 22–23. She was then transferred to the Intensive Care Unit, where she experienced progressive multi-organ failure and died. *Id*. at ¶ 24.

Rodríguez's estate and Damaris Pérez-Rodríguez, Rodríguez's daughter, filed this action against the United States of America and SIM under the Federal Tort Claims Act (FTCA), alleging that SIM's medical personnel acted

negligently by discharging her instead of referring her for treatment. *Id*. at ¶¶ 28–30. Although the plaintiffs' complaint is not perfectly clear at times, we discern three FTCA claims against the United States: (1) a medical malpractice claim based on Dr. Casanova's personal liability for his negligence, (2) a medical malpractice claim based on SIM's liability for the negligence of its medical personnel, and (3) a negligent infliction of emotional distress claim based on SIM's liability for the negligence of its medical personnel.

## II. PROCEDURAL HISTORY

The defendants[1] have filed a motion to dismiss the plaintiffs' complaint under Rules 12(b)(1) and 12(b)(6), arguing that the plaintiffs have failed to show that the Court has subject-matter jurisdiction over their claims and failed to state a claim based on the conduct of any actor other than Dr. Casanova. Docket No. 15. The defendants contend that Dr.

---

1. Because the plaintiffs' claims are brought under the FTCA, the United States is the only proper defendant. *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006). But SIM appears to have been served, *see* Docket No. 10, and the defendants' motion to dismiss is on behalf of all defendants, Docket No. 15.

Casanova is not a Public Health Service employee and that therefore the United States' waiver of sovereign immunity in the Public Health Service Act (PHSA), 42 U.S.C. § 233, and FTCA does not cover his conduct. Docket No. 15, pgs. 8-12. The defendants attached evidence to their motion showing that Dr. Casanova was employed by Platinum Emergency Group ("Platinum"), which had contracted with SIM to provide medical services. Docket No. 15-3; Docket No. 28-1. Because Dr. Casanova and SIM do not have a direct contractual relationship, the government argues that the PHSA and FTCA do not cover his conduct. The defendants also discern a negligent supervision claim in the complaint and argue that the claim is barred by the FTCA's discretionary function exception. Docket No. 15, pgs. 12–17.

In response to the defendants' motion to dismiss, the plaintiffs filed a motion for jurisdictional discovery, asking for the contract between Platinum and SIM. Docket No. 23. The defendants attached a copy of it to their opposition. Docket No. 28-1. We denied the plaintiffs' motion on the ground that

it was moot. Docket No. 31.[2] The plaintiffs then filed an opposition to the defendants' motion to dismiss. Docket No. 34. They argue first that the motion to dismiss must be converted into a motion for summary judgement. *Id.* at pgs. 4–7. Next, they contend that Dr. Casanova and Platinum are covered by the PHSA and FTCA. *Id.* at pgs. 8–12. Finally, they assert that the discretionary function exception does not apply. *Id.* at pgs. 12–18.

### III. THE DEFENDANTS' MOTION TO DISMISS

### A. FTCA, PHSA, & FSHCAA

"Federal courts lack subject-matter jurisdiction over claims against the United States absent a waiver of sovereign immunity." *Davallou v. United States*, 998 F.3d 502, 504 (1st Cir. 2021). The FTCA provides "a limited congressional waiver of the sovereign immunity of the United States for tortious acts and omissions committed by federal employees acting within the scope of their employment." *Escalona-Salgado v. United*

---

2. The defendants argued in their opposition that the plaintiffs' motion was moot because they produced the documents that the plaintiffs had asked for. Docket No. 28, pg. 1. The plaintiffs chose not to file a reply.

*States*, 911 F.3d 38, 40 (1st Cir. 2018) (quoting *Díaz-Nieves v. United States*, 858 F.3d 678, 683 (1st Cir. 2017)). The PHSA makes a tort action against the United States under the FTCA the "'exclusive' remedy for certain 'act[s] or omission[s]' on the part of [Public Health Service] employees resulting in personal injury or death." *O'Brien v. United States*, 56 F.4th 139, 147 (1st Cir. 2022) (quoting 42 U.S.C. § 233(a)). The Federally Supported Health Centers Assistance Act (FSHCAA) amended the PHSA so that "private health centers receiving federal funds under 42 U.S.C. § 254b—as well as officers, board members, employees, and certain contractors of such entities—are eligible for the same PHSA and FTCA protections as are enjoyed by [Public Health Service] employees." *Id.* at 148. To gain these protections, health centers or the individuals associated with them must be "deemed" a Public Health Service employee. *Id.* (quoting § 233(g)(1)(A)).

The Secretary of Health and Human Services holds the power to deem a health center or affiliated individual a Public

Health Service employee. *Id.* But that the Secretary has
deemed a health center a Public Health Service employee
"does not conclusively establish PHSA and FTCA coverage
with respect to a particular lawsuit when . . . an action is
brought against a physician affiliated with a federally funded
health center." *Id.* at 148–49. A physician affiliated with a
federally funded health center is considered a contractor of
the health center—and is therefore covered by the PHSA and
FTCA—if he "normally performs on average at least 32½
hours of service per week for the entity for the period of the
contract" or, if he works less than that "for the period of the
contract," "is a licensed or certified provider of services in the
fields of family practice, general internal medicine, general
pediatrics, or obstetrics and gynecology." § 233(g)(5).

It is undisputed that SIM is a federally funded health
center under § 254b and that the Secretary of Health and
Human Services had deemed it a Public Health Service
employee at the time Rodríguez received care there. Docket
No. 15, pg. 15; *see also* Docket No. 15-1. It is further undisputed

that SIM is therefore covered by the PHSA and FTCA. Docket No. 15, pg. 15. So there is no dispute that the United States stands in SIM's shoes with respect to claims brought against it that are within the scope of the United States' waiver of sovereign immunity in the PHSA and FTCA. The issue is whether the United States also stands in Dr. Casanova's shoes, which turns on whether he is SIM's contractor within the meaning of § 233(g) of the PHSA. Because this issue is tied to the United States' sovereign immunity, it implicates our subject-matter jurisdiction. *See Davallou*, 998 F.3d at 504.

That brings us to the defendants' motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). There are two broad types of jurisdictional challenges: facial and factual. *Cebollero-Bertrán v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021). In facial challenges, sometimes called sufficiency challenges, the movant accepts the nonmovant's jurisdictionally significant facts but challenges their sufficiency to confer subject-matter jurisdiction. *See Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 363

(1st Cir. 2001). "The analysis is essentially the same as a Rule 12(b)(6) analysis: we accept the well-pleaded facts alleged in the complaint as true and ask whether the plaintiff has stated a plausible claim that the court has subject matter jurisdiction." *Cebollero-Bertrán*, 4 F.4th at 69. But in factual challenges, the movant contests the nonmovant's jurisdictionally significant facts, requiring the court to "engage in judicial factfinding to resolve the merits of the jurisdictional claim." *Id.* In conducting this analysis, we have "broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings." *Valentín*, 254 F.3d at 363. The reason for this is simple: "[W]hen a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached." *Id.* at 364.

We decline the plaintiffs' invitation to evaluate the defendants' motion to dismiss as a motion for summary judgment under Rule 56 merely because the defendants

attached extrinsic evidence to their motion. For as we said, we
enjoy broad authority to consider extrinsic evidence to verify
that we have jurisdiction. *See González v. United States*, 284
F.3d 281, 288 (1st Cir. 2002) ("attach[ing] . . . exhibits to a Rule
12(b)(1) motion does not convert it to a Rule 56 motion"). To
be sure, there are some circumstances where the merits of the
case and the jurisdictional challenge are so intertwined that
the motion to dismiss should be evaluated under Rule 56.
*Torres-Negrón v. J & N Records, LLC*, 504 F.3d 151, 163 (1st Cir.
2007). But this is not one of them.

  "A jurisdictional issue is intertwined with the merits
where the court's subject matter jurisdiction depends upon
the statute that governs the substantive claims in the case."
*González*, 284 F.3d at 287. Our subject-matter jurisdiction as to
the plaintiffs' FTCA claim based on Dr. Casanova's personal
liability depends on whether Dr. Casanova is SIM's contractor
under § 233(g) of the PHSA, whereas the merits of the
plaintiffs' claims are governed by § 233(a) of the PHSA and 28
U.S.C. § 1346(b)(1) of the FTCA, which borrow from Puerto

Rico law for the standard of liability. *See Martínez v. United
States*, 33 F.4th 20, 23 (1st Cir. 2022) (citing 28 U.S.C. § 1346(b)
and noting that Puerto Rico law provides the standard of
liability). Because we can decide whether Dr. Casanova is
SIM's contractor under § 233(g) of the PHSA without
touching the merits, we evaluate the defendants' motion to
dismiss under Rule 12(b)(1), not Rule 56. And in evaluating
the defendants' motion under Rule 12(b)(1), because this is a
factual challenge to the plaintiffs' assertion that Dr. Casanova
is covered by the PHSA and FTCA, the plaintiffs'
"jurisdictional averments are entitled to no presumptive
weight." *Valentín*, 254 F.3d at 363.

With our analytical and statutory moorings in place,
we turn to whether Dr. Casanova is SIM's contractor under
§ 233(g) of the PHSA. SIM and its officers, governing board
members, and employees are deemed Public Health Service
employees and therefore enjoy the protections of the PHSA
and FTCA. *See* § 233(g)(1)(A). A contractor of SIM is also
deemed a Public Health Service employee if he is a "physician

or other licensed or certified health care practitioner" who
meets the requirements in § 233(g)(5). § 233(g)(1)(A). Section
233(g)(5) reads as follows:

> [A]n individual may be considered a contractor
> . . . only if . . .
>
> (A) the individual normally performs on
> average at least 32½ hours of service per week
> for the entity for the period of the contract; or
>
> (B) in the case of an individual who normally
> performs an average of less than 32½ hours of
> services per week for the entity for the period of
> the contract, the individual is a licensed or
> certified provider of services in the fields of
> family practice, general internal medicine,
> general pediatrics, or obstetrics and
> gynecology.

Dr. Casanova does not have a direct contractual
relationship with SIM. Rather, he has a contract with
Platinum, which has a contract with SIM. Docket Nos. 28-1,
15-3. The defendants contend that § 233(g) requires the
physician to have a direct contractual relationship with the
federally funded health center to be considered its contractor

and therefore deemed a Public Health Service employee who is covered by the PHSA and FTCA. Docket No. 15, pg. 9. The plaintiffs disagree, arguing that it is sufficient that Dr. Casanova is a physician who is a licensed provider in internal medicine. Docket No. 34, pg. 10. So the question is whether a direct contractual relationship between the physician and the federally funded health center is necessary for the physician to be considered the center's contractor under § 233(g).

Statutory interpretation rules operate a little differently here because our answer to whether § 233(g) requires a direct contractual relationship affects the breadth of the United States' waiver of sovereign immunity. "[A] waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." *FAA v. Cooper*, 566 U.S. 284, 290 (2012). Under the sovereign-immunity cannon, ambiguities in the statutory language and in the scope of the waiver are construed in favor of immunity. *See id.* But this cannon "'is a tool for interpreting the law' and . . . it does not 'displac[e] the other traditional tools of statutory construction.'" *IRS v.*

*Murphy*, 892 F.3d 29, 40 (1st Cir. 2018) (quoting *Cooper*, 566 U.S. at 291). Thus, we must "be careful not to be more stinting in the interpretation of the provision than its language requires." *Id.* (quoting *Rakes v. United States*, 442 F.3d 7, 19 n.6 (1st Cir. 2006)). In short, we begin with traditional interpretive tools, but if the waiver's scope is not "clearly discernable," "we take the interpretation most favorable to the [United States]." *Cooper*, 566 U.S. at 291.

We do not write on a pristine slate. In *Dedrick v. Youngblood*, 200 F.3d 744 (11th Cir. 2000), the Eleventh Circuit held that "§ 233(g) sets forth an initial requirement that a qualified individual first must have contracted with a covered entity." *Id.* at 747. It reasoned that the language "any contractor of such an entity *who is a physician* or other licensed or certified health care practitioner"—specifically the personal pronoun "who"—"identif[ies] only individual physicians who contract with eligible entities, not organizations or foundations who contract with eligible entities." *Id.* at 746; *see also El Rio Santa Cruz Neighborhood*

*Health Ctr. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1278 (D.C. Cir. 2005) (LeCraft Henderson, J., concurring) ("[T]he contractor must be an 'individual' to receive coverage . . . ."). We agree with *Dedrick*'s reasoning and add that, because a contractor is a "party to a contract," *Contractor*, BLACK'S LAW DICTIONARY (11th ed. 2019), the most natural reading of "any contractor of such an entity" is any party to a contract with that entity. Because Dr. Casanova is not an individual who has a contract with SIM, he is not its contractor within the meaning of § 233(g).

Although we arrived at this construction based on normal interpretive tools, if the language in § 233(g) were susceptible to another plausible interpretation, we would construe any ambiguity in favor of the United States. *Cooper*, 566 U.S. at 290–91. Thus, regardless of whether the statutory text is plain or ambiguous, a contractor under § 233(g) must have a direct contractual relationship with the federally funded health center. Because Dr. Casanova does not have a contract with SIM, he is not its contractor within the meaning

of § 233(g) and thus cannot be deemed a Public Health Service employee covered by the PHSA and FTCA.

The plaintiffs, however, have a back-up argument: They contend that Platinum—and by extension Dr. Casanova—is covered by the PHSA and FTCA because it is a "subrecipient" of SIM's grant funds under the regulations at 42 C.F.R. §§ 6.1–6.6. Docket No. 34, pg. 10.

The regulations at 42 C.F.R. §§ 6.1–6.6 apply to "entities and individuals whose acts and omissions related to the performance of medical, surgical, dental, or related functions are covered by the [FTCA] in accordance with the provisions of [the PHSA]." 42 C.F.R. § 6.1. They provide that a "[c]overed entity means an entity described in § 6.3 which has been deemed by the Secretary, in accordance with § 6.5, to be covered." 42 C.F.R. § 6.2. Under § 6.3(b), a subrecipient of a federally funded health center's grant funds that "provides a full range of healthcare services on behalf of an eligible grantee" is eligible for FTCA coverage for the services "carried out under the grant funded project." But § 6.2 makes

clear that the subrecipient must have been deemed covered
by the Secretary. So even if we assume that Platinum is a
subrecipient of SIM's grant funds and is therefore eligible for
PHSA and FTCA coverage, the plaintiffs' argument that
Platinum is covered fails because the Secretary has not
deemed Platinum covered. The defendants submitted a letter
from the U.S. Department of Health and Human Services
stating that Platinum has not been deemed covered. Docket
No. 28-3. The plaintiffs have not contested this evidence.
Because the Secretary has not deemed Platinum covered by
the PHSA and FTCA, it is not a covered entity.

Because Dr. Casanova is not SIM's contractor within
the meaning of § 233(g) and the Secretary has not deemed
Platinum covered by the PHSA and FTCA, the United States'
waiver of sovereign immunity does not cover claims based on
Dr. Casanova's personal liability for his allegedly negligent
conduct. Accordingly, we dismiss the plaintiffs' claim based
on Dr. Casanova's personal liability for his allegedly
negligent conduct for lack of subject-matter jurisdiction.

## B. Negligent Supervision & the Discretionary Function Exception

The defendants contend that the plaintiffs "suggested" that "SIM was negligent because it failed to properly supervise Dr. Casanova's diagnosis, treatment decisions, and discharge orders" and "recall" Rodríguez. Docket No. 15, pgs. 12–13. This "potential" claim, they say, is barred by the discretionary function exception. *Id.* at pgs. 13–18.

The FTCA "is subject to a gallimaufry of exceptions." *Gordo-González v. United States*, 873 F.3d 32, 35 (1st Cir. 2017). The discretionary function exception is one of them. *Id.* at 36. Under this exception, "the United States does not waive sovereign immunity for any tort that arises from 'the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused.'" *Id.* (quoting 28 U.S.C. § 2680(a)). To determine whether this exception applies, we "identify the conduct giving rise to the claim asserted," "determine whether that conduct can fairly be characterized as discretionary," and then "decide whether the exercise of

the discerned discretion 'is susceptible to policy-related judgments.'" *Id.* (first citing *Fothergill v. United States*, 566 F.3d 248, 252 (1st Cir. 2009); and then quoting *Bolduc v. United States*, 402 F.3d 50, 60 (1st Cir. 2005)).

The problem with the defendants' argument that the discretionary function exception blocks the plaintiffs' "potential" or "suggested" negligent supervision claim is that we see no such claim in the complaint. Although the parties have not fleshed out the elements of a negligent supervision claim under Puerto Rico law—the relevant substantive law because that is where the alleged harm occurred, *Martínez*, 33 F.4th at 23—we see none of the usual hallmarks of such a claim. Generally, a negligent supervision claim is a form of *direct* liability for a supervisor's own negligent conduct, such as giving improper instructions, employing improper people, or improperly supervising a person or activity. RESTATEMENT (SECOND) OF AGENCY § 213 (AM. L. INST. 1958). The plaintiffs allege that SIM, "through Dr. Casanova and others, discharged Mrs. Rodríguez with myocardial ischemia

without referring her to a hospital" and "failed to recall Mrs.
Rodríguez with a positive EKG." Docket No. 1, pg. 6. And
they say that because of "the negligent acts and/or omissions
of SIM's employees, staff, and agents . . . by failing to diagnose
and/or treat Mrs. Rodríguez according to generally accepted
medical standards of care," she experienced severe pain and
emotional distress and her daughter experienced mental
anguish and emotional distress. *Id.* So the plaintiffs target SIM
through the acts and omissions of its medical personnel vis-à-
vis Rodríguez's treatment and discharge, not through the
failure of its supervisors to oversee their subordinates'
treatment and discharge of her. Indeed, in alleging causation,
the plaintiffs say that "[t]his situation could have been
avoided had the SIM and its medical personnel closely
evaluated and monitored Mrs. Rodríguez's health," *id.* at
¶ 35, not that this situation could have been avoided had
SIM's supervisors better supervised their subordinates.

To sum up, the plaintiffs' allegations about SIM fault it
for its medical personnel's professional judgment. We see no

allegations about the quality of its supervisors' supervision. Thus, we need not decide whether a hypothetical negligent supervision claim would be barred by the discretionary function exception.

## C.  Failure to State a Claim

The defendants argue that the plaintiffs have failed to state a medical malpractice claim under Puerto Rico law as to SIM and the unnamed actors in their complaint because the "only negligent act specifically alleged" is Dr. Casanova's "failure to diagnose or treat" Rodríguez. Docket No. 15, pg. 21; Docket No. 37, pg. 13 ("Because Plaintiffs' nonspecific, incomplete allegations as to everyone but Dr. Casanova fail to set out a plausible claim upon which relief can be granted, they should be dismissed."). In response, the plaintiffs argue that SIM is vicariously liable for Dr. Casanova's negligence under apparent agency principles. Docket No. 34, pgs. 14–18.

To survive a motion to dismiss for failure to state a claim, the plaintiffs' complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018) (quoting *SEC v. Tambone*, 597 F.3d 436, 437 (1st Cir. 2010) (en banc)). We take their well-pleaded facts as true and draw all reasonable inferences in their favor. *Id.* But "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Id.* (quoting *Tambone*, 597 F.3d at 437).

Puerto Rico law, the law of the place where the alleged harm occurred, "provides the standard of liability." *Martínez*, 33 F.4th at 23 (quoting *Torres-Lazarini v. United States*, 523 F.3d 69, 72 (1st Cir. 2008)). To state a medical malpractice claim under Puerto Rico law, the plaintiffs must allege three elements: (1) they were owed a duty "(i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances)," (2) "an act or omission transgressing that duty," and (3) "a sufficient causal nexus between the breach and the claimed harm." *Id.* (first quoting *Torres-Lazarini*, 523 F.3d at 72; and then quoting *Cortes-Irizarry*

*v. Corporación Insular De Seguros*, 111 F.3d 184, 189 (1st Cir. 1997)). Under a Puerto Rico negligent infliction of emotional distress claim, "individuals who are harmed because a close relative or loved one is tortiously injured may invoke [Puerto Rico's general tort statute] as a vehicle for prosecuting a cause of action against the tortfeasor." *Vargas-Colón v. Fundación-Damas, Inc.*, 864 F.3d 14, 22 (1st Cir. 2017) (quoting *Díaz-Nieves*, 858 F.3d at 689). This is a derivative claim that requires a plaintiff to prove three elements: "(1) that he has suffered emotional harm, (2) that this harm was caused by the tortious conduct of the defendant toward the plaintiff's relative or loved one, and (3) that the defendant's conduct was tortious or wrongful." *Id.* (quoting *Díaz-Nieves*, 858 F.3d at 689).

The defendants argue that the plaintiffs have failed to state a claim as to SIM and the unnamed actors in the complaint because they do not allege any specific breaches of the duty of care that contributed to the plaintiffs' harm by anyone except for Dr. Casanova. We, again, read the complaint differently. The gravamen of the complaint is that

SIM's medical personnel should have noticed that Rodríguez was showing symptoms of myocardial ischemia, through her chest pain and positive EKG, and referred her for treatment and that their failure to do so harmed her. That covers the elements of a medical malpractice claim. *Martínez*, 33 F.4th at 23. Although there are some specific allegations about who did what (*i.e.*, Dr. Casanova examined her, ordered an EKG, and discharged her, and nurses were monitoring her), that the plaintiffs do not know before discovery which personnel monitored her, read her EKG, and made treatment decisions does not mean that they failed to satisfy notice pleading's low bar. *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 57 (1st Cir. 2006) (stating that "notice pleading imposes minimal requirements on the pleader" and that the "pleading must 'at least set forth minimal facts as to who did what to whom, when, where, and why'" (quoting *Educadores Puertorriquenos en Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004))).

Moreover, the defendants ask us to dismiss the complaint in full, but they do not explain why the plaintiffs

have failed to state a plausible claim for negligent infliction of emotional distress. The plaintiffs allege that Rodríguez's daughter agonized greatly when watching her mother suffer and die. Docket No. 1 at ¶ 38. And they allege that SIM's medical personnel's negligent conduct toward her mother caused this agony. *Id.* That, too, hits all the elements and looks plausible. So the plaintiffs have stated a plausible medical malpractice claim and a plausible negligent infliction of emotional distress claim based on SIM's medical personnel's conduct.

That brings us to an important issue that neither party has briefed. The plaintiffs are bringing their medical malpractice and negligent infliction of emotional distress claims based on SIM's medical personnel's conduct against the United States through the PHSA and FTCA. Under the PHSA, a Public Health Service employee has "absolute immunity . . . for actions arising out of the performance of medical or related functions within the scope of their employment . . . . By its terms, [the PHSA] limits recovery for

such conduct to suits against the United States." *Hui v. Castaneda*, 559 U.S. 779, 806 (2010). "Only acts and omissions related to the grant-supported activity of entities are covered." 42 C.F.R. § 6.6(d). It is undisputed that SIM was deemed a Public Health Service employee at the relevant time. But it is still unclear which medical personnel, besides Dr. Casanova, were responsible for monitoring and making treatment decisions for Rodríguez. That means that we still do not know whether all the allegedly negligent actors are to be deemed employees of the Public Health Service under § 233(g) based on their affiliation with SIM and are therefore covered by the PHSA and FTCA.

There is another wrinkle. The plaintiffs contend that SIM is liable for its medical personnel's medical malpractice and negligent infliction of emotional distress (including Dr. Casanova's) under the doctrine of apparent agency. Docket No. 34, pgs. 15–18. Under Puerto Rico's apparent agency doctrine, if a person goes to a medical center for treatment and the center provides him with the physician who treats him,

the medical center and the physician are jointly liable for the physician's malpractice. *Suero-Algarín v. CMT Hosp. Hima San Pablo Caguas*, 957 F.3d 30, 38 (1st Cir. 2020) (citing *Márquez-Vega v. Martínez-Rosado*, 16 P.R. Offic. Trans. 487, 497 (P.R. 1985)). That is because, in the patient's eyes, the medical center held out to the public that the physician was acting on its behalf and that the physician was fit to give the patient medical care. *Márquez-Vega*, 16 P.R. Offic. Trans. at 497–98. But where the patient goes directly to a physician, agrees on treatment, and goes to the medical center on the physician's recommendation, the medical center is not liable for the physician's negligence because "the main relationship established [there] is between the 'patient' and the physician." *Suero-Algarín*, 957 F.3d at 38 (citing *Márquez-Vega*, 16 P.R. Offic. Trans. at 499). Whether the medical center is liable under the doctrine of apparent authority comes down to "pinpointing who . . . the patient . . . entrust[ed] with his health: the hospital or the physician." *Id.* (quoting *Márquez-Vega*, 16 P.R. Offic. Trans. at 496–97). "[I]t makes no difference

whether the attending physician is a hospital employee or not." *Id.* (quoting *Márquez-Vega*, 16 P.R. Offic. Trans. at 496–97).

The defendants have not provided us with any briefing about the plaintiffs' apparent agency theory. And the plaintiffs' theory might have traction under *Márquez-Vega*. They allege that Rodríguez visited SIM complaining of chest pain, that Dr. Casanova evaluated her and nurses monitored her, that he was negligent in discharging her instead of referring her for treatment, and that other personnel were negligent for not noticing her symptoms and calling her back in when they saw that she had a positive EKG. We reasonably infer in the plaintiffs' favor, as we must at this stage, that Rodríguez did not have a preexisting relationship with Dr. Casanova, or any other medical personnel she encountered there, and that she therefore entrusted SIM with her health. *See Suero-Algarín*, 957 F.3d at 38. Under the rule of *Márquez-Vega*, SIM may be liable for its medical personnel's conduct (including Dr. Casanova's) under these circumstances.

SIM has immunity for, and thus the United States will stand in its shoes and defend it against, "actions arising out of the performance of medical or related functions within the scope of [its] employment." *Hui*, 559 U.S. at 806; *see also* § 233(a) ("The remedy against the United States provided by [the FTCA] . . . for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, . . . by any . . . employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive."). Does the United States' waiver of sovereign immunity in the PHSA and FTCA cover negligence claims that arise from the conduct of the medical personnel of a Public Health Service employee under a theory of vicarious liability? Does that include someone like Dr. Casanova because—even though he is not a Public Health Service employee or SIM's employee—SIM is a Public Health Service employee and, if it were a private hospital, it may be liable for his conduct under a theory of apparent agency under Puerto Rico law? These are interesting questions that

the parties have not addressed, and we will not do so on our
own without the benefit of adversarial briefing.

In short, the United States stands in SIM's shoes here
because SIM was deemed a Public Health Service employee
during the relevant time. But it does not stand in Dr.
Casanova's shoes because he is not SIM's contractor within
the meaning of § 233(g) and thus is not covered by the PHSA
and FTCA. The unanswered question that the parties have not
briefed is whether the United States, standing in SIM's shoes,
is liable for Dr. Casanova's negligence and other non-covered
medical personnel's negligence under Puerto Rico's apparent
agency doctrine.

## IV. CONCLUSION

In sum, for the reasons above, the Court **GRANTS in
part and DENIES in part** the defendants' motion to dismiss
(Docket No. 15). Because Dr. Casanova is not covered by the
PHSA and FTCA, the United States does not stand in his
shoes. We therefore dismiss without prejudice for lack of
subject-matter jurisdiction the plaintiffs' FTCA claim against

the United States based on Dr. Casanova's personal liability for his alleged negligence. And because we lack adversarial briefing on the plaintiffs' theory that the United States, standing in SIM's shoes, is liable for the negligence of SIM's medical personnel, including Dr. Casanova, under vicarious liability principles, the plaintiffs' medical malpractice and negligent infliction of emotional distress claims remain.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March 2023.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE